IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LUKE ALEXANDER PRINDABLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-CV-696-MAB |
| | ) |
| DR. GADFREY, | ) |
| JAYCENA WOOLENS, | ) |
| THOMAS SAGGIO, and | ) |
| BONNIE JONES, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendants Dr. Gadfrey, Bonnie Jones, Thomas Saggio, and Jaycena Woolens (Doc. 55. *See also* Doc. 56). For the reasons explained below, the motion is granted.

### BACKGROUND

Plaintiff Luke Prindable, a former inmate at St. Clair County Jail, brings this civil rights action pursuant to 42 U.S.C. § 1983 (Docs. 1, 27). Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims:

> **Count 1:** Fourteenth Amendment claim against Dr. Gadfrey and Nurse Bonnie Jones for denying Plaintiff informed consent when they prescribed him a cocktail of medications that includes ibuprofen, acetaminophen, mirtazapine (Remeron), and lithium in March and April 2021 without providing an explanation of the adverse side effects.

> **Count 2:** Eighth or Fourteenth Amendment claim against Dr. Gadfrey and Nurse Jones for failing to treat Plaintiff's adverse side effects (stomach pain, cramps, and bloody stools) in March and April 2021.
>
> **Count 3:** Eighth or Fourteenth Amendment claim against EMT Jaycena Woolens and RN Thomas Saggio for refusing to send Plaintiff for treatment at a hospital or to pump his stomach when he complained of adverse side effects that included severe stomach pain, cramps, and bloody stools in March and April 2021.

(Doc. 27).

Defendants filed a motion for summary judgment on the issue of exhaustion on March 29, 2022, and included Plaintiff's grievance file from St. Clair County Jail as an exhibit (Doc. 55; *see also* Docs. 56, 56-1). They argue that none of complaints or grievances in Plaintiff's file are specific to the claims he is making in this suit, and none mention Defendants (Doc. 56). Plaintiff did not file a timely response to the motion. On May 6, 2022, Defendants filed a motion to dismiss for lack of prosecution, pursuant to FED. R. CIV. P. 37(b)(2)(A)(v) and 41(b) (Doc. 60). On June 17, 2022, the Court entered a Show Cause Order, *sua sponte*, noting that Plaintiff had repeatedly missed deadlines in this case and ordering him to respond with an explanation as to why the Court should not dismiss this case for lack of prosecution (Doc. 61). On June 23, 2022, Plaintiff filed a response to the Show Cause Order (Doc. 62).

On November 21, 2022, the Court denied Defendants' motion to dismiss for lack of prosecution and stated that Defendants' motion for summary judgment on the issue of exhaustion would be analyzed along with the information Plaintiff provided in his response to the Show Cause Order (Doc. 63).

## LEGAL STANDARD

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Failure to do so means failure to exhaust. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). However, an inmate is required to exhaust only those administrative remedies that are available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting. *Pyles*, 829 F.3d at 864; *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809**.**

As a detainee at the St. Clair County Jail, Plaintiff was required to follow the

grievance process outlined in the Jail's Detainee Rules and Regulations manual—which is commonly referred to as the "Handbook"—to exhaust his claims (Doc. 56-2). The first step is to submit a Captain's Complaint (or Captain's Request) (Docs. 56 at p. 3; 56-2 at p. 11). If the detainee is not satisfied with the response they receive to their Captain's Complaint, they must submit a Detainee Grievance Form (*Id.*). These grievance forms "can be obtained from any supervisor or correctional officer" (*Id.*). The "immediate supervisor" provides a response to the grievance, and if the detainee is still not satisfied, they can submit the grievance to the Assistant Jail Superintendent through the on-duty shift supervisor (*Id.*). It appears that after the detainee receives the Assistant Superintendent's response, the detainee must then submit the grievance to the Jail Superintendent (*Id.*). The Jail Superintendent will review all of the previous responses and either approve them or disapprove and revise the responses (*Id.*). The Jail Superintendent's response shall constitute final resolution of the grievance (*Id.*)

## DISCUSSION

The grievance file produced by Defendants includes 19 Captain's Complaints and three grievances that were submitted by Plaintiff at the Jail between late March 2021 and July 2021 (Doc. 56-1). Defendants correctly point out that Plaintiff's grievance file does not include any Captain's Complaints or grievances specific to the claims or issues in this case. None of the complaints or grievances discuss the medications at issue in this suit nor the purported side effects of those medications. And none refer to Defendants by name or any other identifying characteristic.

Reviewing the file for any complaints or grievances that may pertain to the incidents at issue and Plaintiff's excuse for failure to exhaust his administrative remedies, on March 25, 2021, Plaintiff submitted a complaint stating that he was being denied grievance forms (Doc. 56-1 at p. 5). An officer responded that Plaintiff could not submit a grievance form before he submitted a complaint. *Id*. On March 29, 2021, Plaintiff filed a complaint stating that officers were not submitting his previous complaints related to an assault he experienced (Doc. 56-1 at p. 11). An officer and a supervisor responded that his previous complaints had been submitted. *Id.* On May 19, 2021, Plaintiff submitted a complaint stating that "they" were putting the same medicine he "filed a lawsuit over" into his food (Doc. 56-1 at p. 18). The file demonstrates that Plaintiff was told about the necessary steps in the grievance process. It also contains no evidence that Plaintiff complained about side effects from medications or being denied medical care for those side effects prior to filing suit.

In his response to the Show Cause Order, Plaintiff states, "I ask that you refer to the 1983 Form of case *Prindable v. Marcowitz [et al.,* SDIL] Case No. 3:21-CV-685-MAB for the Grievance Procedure as to why there was no Grievance Forms filed for this case" (Doc. 62). *Marcowitz* is another lawsuit filed by Plaintiff and pending before this Court.

The Court is unsure as to what exactly Plaintiff means by "1983 form," but will construe it as referring to the complaint filed in *Macrowitz*, which is Case No. 21-cv-685-MAB. In that complaint, Plaintiff asserted claims of deliberate indifference for being denied medical attention after complaining of testicle pain. *Marcowitz*, SDIL Case No. 3:21-CV-0685-MAB, Doc. 1, Doc. 7. Plaintiff alleged that he did not complete the grievance

process as to these claims because he "was unable to file a grievance" *Id.* at Doc. 1, p. 4. More specifically, Plaintiff said he filed multiple complaint forms, but could not proceed to the next step of the grievance process because he was told by an officer that he "could not receive a grievance form for this incident." *Id.*

The Court is unsure what it is supposed to take away from the complaint in *Marcowitz* regarding the grievance process as it pertains to the instant case. Plaintiff does not state that he was denied complaint forms. Moreover, he does not say that he submitted a complaint related to any of incidents at issue in this suit. In short, there is nothing in the record in *Macrowitz* that Plaintiff has pointed the Court to, which has any bearing as to the issues in this case. Thus, there is no evidence that he even attempted to avail himself of the grievance process as it pertains to the issues and claims in this case. Accordingly, Defendants are entitled to summary judgment.

## Conclusion

The motions for summary judgment on the issue of exhaustion filed by Defendants (Doc. 55) is **GRANTED.** Defendants are **DISMISSED without prejudice** due to Plaintiff's failure to exhaust his administrative remedies. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: March 30, 2023**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

## NOTICE

If Plaintiff wishes to contest the Order granting summary judgment to Defendant on the issue of exhaustion, he has two options. He can ask the Seventh Circuit to review the order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Plaintiff wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation

and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and submitted on-time, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, the deadline for filing a notice of appeal can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Plaintiff chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).